**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JOHN A. BARTOLINI and
NEW YORK METRO CLOUD LLC,

                Plaintiffs,

       -v-                         3:24-CV-1380 (AJB/ML) (LEAD)
                                   3:24-CV-1383 (AJB/ML) (MEMBER)

TOWN OF DRYDEN _et al._,

                Defendants.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION and ORDER</u>**

## I.     INTRODUCTION

On September 18, 2024, _pro se_ plaintiff John A. Bartolini ("Bartolini"), a Westchester County resident, filed this 42 U.S.C. § 1983 action on behalf of himself and his crypto services hosting company, New York Metro Cloud LLC ("NYMC"). Broadly speaking, plaintiff alleges that the Town of Dryden (the "Town"), along with numerous Town employees, board members, zoning board members, two attorneys, and a private law firm conspired to violate his civil rights by, _inter alia_, improperly denying NYMC's request for a certain land-use permit. Dkt. No. 1.

Plaintiffs initially filed this action in the U.S. District Court for the Southern District of New York. Soon after, however, plaintiffs filed a letter seeking to have venue transferred to the Northern District of New York. Dkt. No. 15. Because all of the events alleged in the complaint occurred in Tompkins County, the presiding judge in the Southern District of New York ordered

the case transferred to this judicial district, where it was initially assigned to Senior U.S. District Judge David N. Hurd.[1]  Dkt. No. 18.  The matter was later reassigned to this Court.  Dkt. No. 35.

Plaintiffs sought and received permission from the assigned magistrate judge to file an amended complaint.  Dkt. No. 29.  Thereafter, the Town, along with Town defendant-officials Jason Leifer, Dan Lamb, Spring Buck, Christina Dravis, Leonardo Vargas-Mendez, Ray Burger, Shelley Knickerbocker, Loren Sparling, Janis Graham, Mary Whitman, Benjamin Curtis, Mike Gill, Andrew Henry, and Henry Slater (the "Town defendants") answered.  Dkt. No. 51.

However, on December 18, 2024, defendants Coughlin & Gerhart, LLP (the "Firm"), Mark Spinner, Esq. ("Attorney Spinner"), and Nathan D. VanWhy, Esq. ("Attorney VanWhy") (the "Law Firm defendants") moved to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 32.

The Law Firm defendants' motion has been fully briefed, Dkt. Nos. 47, 50, and will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

The following facts are taken from the amended complaint and its attached exhibits, Dkt. No. 29, and will be assumed true for the purpose of assessing the motion to dismiss.

Bartolini lives in Westchester County, New York.  Am. Compl. at 96–97.[2]  He operates a "small sole proprietor commercial [hosting services provider]" or an "HSP," which "is an IT

---

[1] Plaintiffs actually filed two civil actions in the Southern District of New York.  The first action was opened on August 5, 2024 (24-CV-5925 (S.D.N.Y.)).  The second action was opened on September 18, 2024 (24-CV-7062 (S.D.N.Y.)).  Both of these cases were transferred to this judicial district because they both alleged claims against an overlapping set of the Town defendants.  The two cases have since been consolidated by the magistrate judge in this judicial district.  Dkt. No. 28.  Notably, however, the earlier-filed action (*i.e.*, the "5925" SDNY case) is not the "LEAD" case because it was assigned a later-filed case identifier when it was opened in the Northern District of New York.  Instead, because the "second" case (*i.e.*, the "7062" SDNY case) bears the earlier-filed identifier in this judicial district ("1380" instead of "1383") it has been designated as the "LEAD" action.  Filings in both cases will only appear on the LEAD docket; *i.e.*, this action.

service company or partner that provides IT resources and/or services" to facilitate commerce on the internet.  *Id*. at 500–03 & n.3.  In January of 2024, Bartolini formed NYMC, a New York limited liability company ("LLC"), to "buy and hold HSP property," to "draw investors," and to "act as a new HSP tech startup."  *Id*. at 504–05.  Bartolini is NYMC's sole member.  *Id*. at 506.

 In May of 2024, NYMC bought a parcel of improved real property at 2186 Dryden Road in Freeville, New York, which is in the Town of Dryden.  Am. Compl. at 129–31, 507–08.  This property included a building (the "Building"), which "can be described as a neglected Quonset style building with a storefront style space front façade."  *Id*. at 511–13.  The Building sits "on .24 acres of land" with "approximately 3,000 square feet of interior space."  *Id*.

 The Building is subject to the Town's zoning and land-use regulations.  Am. Compl. at 514–15 & Ex. 1.  The Building is zoned for "Mixed-Use Commercial," which means it can be used as a "Service Business."  *Id.* at 516–19 & Ex. 2.  The Town's land-use regulations define a "Service Business" as "[a]ny business or nonprofit organization that provides services to individuals, businesses, industry, government, or other enterprises."  *Id*. at 518–19 & Ex. 4.  As Bartolini explains, NYMC intended to "rent hosting space" in the Building "once its power was turned on."  *Id*. at 133–35.

 On May 31, 2024, the Town's Director of Planning Ray Burger called NYMC "to tell the Plaintiffs he did not like crypto and was concerned about how much power it would use and the terrible noise it creates that affects the neighbors."  Am. Compl. at 522–25.  During this phone call, NYMC explained to Director Burger "that its computers make no noise because they are immersion-cooled and do not have fans," but that in any event "he believed the Town had no say

---

[2]  The amended complaint is sequentially numbered by line and the attached exhibits are labeled appropriately. Accordingly, citations to the pleading and exhibits correspond with that document's internal pagination.

in his already allotted power usage," since "NYSEG decides if the business will get [any request for increased needs] delivered and when." *Id*. at 258–31, 526–27.

On June 6, 2024, the Town's Code Enforcement Officer Shelley Knickerbocker "refused to let NYMC turn on electric power by stating an HSP is not an allowable use . . . and instructed Plaintiff to file for an interpretation and building permit." Am. Compl. at 534–37 & Ex. 5.  The next day, "NYMC submitted a building permit seeking merely to turn on the power to confirm utilities, clean up, etc." and "submitted a Zoning Permit Application Interpretation Request to clarify zoning law for an HSP as an allowed use." *Id*. at 538–41.  Officer Knickerbocker denied those applications on June 18, 2024.[3] *Id*. at 542–43.

On June 20, 2024, Bartolini applied for an interpretation (*i.e.*, he appealed) to the Town's Zoning Board of Appeals ("ZBA").  Am. Compl. at 546–52 & Ex. 8.  There, Bartolini argued his view that an HSP is a permitted use.  *Id*.  According to Bartolini, "this same property a decade prior was openly used for crypto mining and game server hosting" and that the "Town had no objections" to its use at that time.  *Id*.  The ZBA scheduled a hearing for the evening of August 6, 2024.  *Id.* at 554–56 & Ex. 9.

On July 10, 2024, the Town's Planning Department sent a memorandum to the Town's ZBA members.  Am. Compl. at 559–62 & Ex. 10.  This memo summarized Bartolini's request for a ZBA interpretation "that a hosting service for Crypto Mining is not a 'Service Business' as defined in [the relevant provision of the Town's Code]." *Id*.  This memo further noted that "the previous owner" had confirmed to the Planning Department "that approximately four years ago and without Town knowledge or approval there was a bit-coin operation at this location for a short time." *Id*.  However, according to the memo, "[t]his was an illegal use." *Id*.

---

[3] In a covering e-mail, Officer Knickerbocker stated that "[t]he use that you propose, crypto mining, is not an allowed use in the Town of Dryden." Am. Compl. at Ex. 7.

On July 30, 2024, NYMC sent a letter to Town officials directing them "to cease and desist violating NYMC's civil rights." Am. Compl. at 566–68 & Ex. 11. As the letter explained, Bartolini believed that the Town had illegally denied NYMC's request for a building permit and likewise refused "to perform a clear and fair reading and application of existing zoning rules any reasonable person would have known." *Id.*

On the evening of July 31, 2024, the Town held a public meeting to consider a new law entitled "a local law affecting a moratorium on commercial cryptocurrency mining operations and data processing centers." Am. Compl. at 587–90 & Ex. 13. Bartolini alleges that NYMC's cease and desist letter was not mentioned at this hearing or entered into the public record. *Id.* at 601–04. Instead, the Town heard public comments from three neighbors who "were concerned and complained about" NYMC's planned use of the Building. *Id.* at 605–07.

Bartolini spoke at the meeting on behalf of NYMC but was eventually told by the Town Supervisor to "be quiet" because residents only get three to four minutes to speak at the meeting. Am. Compl. at 609–18. Bartolini alleges that the "Town Supervisor, lawyer by trade, was trying desperately to shut NYMC up and break his momentum because he was winning the room with logic." *Id.* at 637–39. Eventually, Bartolini left the meeting "because no proper public meeting was being conducted." *Id.* at 754–55. At the end of the meeting, the Town voted to approve the moratorium on commercial crypto mining. *Id.* at 794–95.

On August 6, 2024, the ZBA "conducted a sham Public Appeal Hearing" on Bartolini's appeal. Am. Compl. at 799–801. According to Bartolini, the ZBA refused to allow NYMC to call witnesses, including Officer Knickerbocker and Director Burger. *Id.* at 800–03. At the end of this "sham hearing," the ZBA "refused to reverse, affirm, or modify the [underlying] decision

and claimed that the hearing was moot due to the Moratorium Law."  Am. Compl. at 826–29 &

Ex. 14.  The ZBA issued a written Notice of Decision to that effect on August 19, 2024.  *Id*.

## III.    LEGAL STANDARDS

### A.  Rule 12(b)(1)

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for

"lack of subject-matter jurisdiction."  FED. R. CIV. P. 12(b)(1).  "A case is properly dismissed for

lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory

or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

2000).  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance

of the evidence.  *Id*.

Rule 12(b)(1) motions can be "facial" or "fact-based."  *See Carter v. HealthPort Techs.,

LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016).  A "facial" Rule 12(b)(1) motion is "based solely on the

allegations of the complaint or the complaint and exhibits attached to it."  *Id*. at 56.  Under those

circumstances, the plaintiff bears no evidentiary burden.  *Katz v. Donna Karan Co., L.L.C.*, 872

F.3d 114, 119 (2d Cir. 2017).  Instead, the court must determine whether the complaint and its

exhibits plausibly allege facts giving rise to subject-matter jurisdiction.  *Carter*, 822 F.3d at 56.

In contrast, a "fact-based" Rule 12(b)(1) motion permits a defendant to proffer evidence

outside of the pleading.  *See Carter*, 822 F.3d at 57.  In that scenario, the plaintiff will ordinarily

need to come forward with evidence of their own to controvert the defendant's showing.  *Id*.  If

the defendant identifies "material and controverted" extrinsic evidence, the court "will need to

make findings of fact in aid of its decision."  *Id*.  However, "if the evidence proffered by the

defendant is immaterial because it does not contradict plausible allegations that are themselves

sufficient to show [subject-matter jurisdiction]," the plaintiff may rely on their pleading.  *Id*.

**B. Rule 12(b)(6)**

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

**IV.    DISCUSSION**

The Law Firm defendants have moved to dismiss the amended complaint insofar as it can be construed to assert claims against the Firm, Attorney Spinner, and/or Attorney VanWhy. *See* Defs.' Mem., Dkt. No. 32-3 at 11–17.[4] In particular, the Law Firm defendants argue: (1) NYMC cannot proceed *pro se* in this action; (2) Bartolini lacks Article III standing to pursue any claims arising from the Town's alleged misconduct because only NYMC, the property owner, suffered concrete harm; (3) Bartolini has not plausibly alleged any constitutional claims against the Firm,

---

[4] Pagination to the briefing corresponds to the electronically generated CM/ECF headers.

Attorney Spinner, and/or Attorney VanWhy; and, even assuming he did so, (4) the constitutional claims must be dismissed because 42 U.S.C. § 1983 does not reach private actors.  *Id*.

In opposition, Bartolini acknowledges that NYMC failed to secure legal counsel for this action "despite due diligence."  Pl.'s Opp'n, Dkt. No. 47 at 4.  Even so, Bartolini argues that he has standing to sue in his own right because the amended complaint "clearly details how he is aggrieved personally" by the Town's alleged misconduct.  *Id*.  In Bartolini's view, the Law Firm defendants' conduct can be imputed to the Town (or vice versa) because those defendants were "contracted by the Town and the firm assigns attorneys as it deems fit to provide traditional Official Town Attorney professional services per NYS Town Law."  *Id*. at 5.  According to Bartolini, he has "clearly pleaded how the attorneys of the firm conspired with the Town" to create the "illegal Moratorium."  *Id*.

Upon review of the memoranda in light of the governing legal principles, the Law Firm defendants' motion to dismiss must be granted.  First off, NYMC—an artificial entity acting as a *pro se* plaintiff—must be dismissed from this action entirely.  "The circumstances under which civil litigants may appear without counsel are limited by statute."  *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008).

The statute governing appearances in federal court is 28 U.S.C. § 1654.  Section 1654 has been construed to permit two types of representation: (1) by a duly licensed attorney; or (2) by a person acting *pro se*; *i.e.*, a person representing himself.  *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (collecting cases).  "[B]ecause *pro se* means to appear for one's self, a person may not appear on another's behalf in the other's cause."  *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).

Corporations, partnerships, associations, and other artificial legal entities with a separate legal existence can only act through agents. *See, e.g.*, *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983). Accordingly, federal courts have uniformly held that 28 U.S.C. § 1654's limitation on *pro se* representation precludes non-lawyers from appearing on behalf of those entities. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993) (collecting cases).

NYMC is a single-member LLC owned by Bartolini. The Second Circuit has applied the rule against non-lawyer representation to limited liability companies that are solely owned or that have only a single member. *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) ("[A] sole member of an [LLC] must bear the burdens that accompany the benefits of the corporate form and may appear in federal court only through a licensed attorney.").

The assigned magistrate judge has repeatedly warned NYMC that it must appear in this action through counsel. Dkt. Nos. 23, 28, 30, 33, 37, 44. Yet NYMC remains *pro se*. Bartolini has acknowledged as much in his opposition. Pl.'s Opp'n at 4 (explaining that NYMC has failed to find an attorney "despite due diligence"). There, Bartolini has also stated that he understands that NYMC cannot proceed *pro se* in this action. *See id.* ("Plaintiff respectfully and timely put this Court on notice by letter that this non-attorney no longer represents the LLC per order.").

In sum, Bartolini and NYMC have been repeatedly informed that NYMC can only appear in this action through counsel, both plaintiffs have acknowledged that NYMC needed to retain an attorney, and both plaintiffs have admittedly failed to cure this defect. Accordingly, NYMC will be dismissed as a named plaintiff. *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (explaining that court may consider this issue on its own motion); *see also Steadman v. Citigroup Glob. Mkts. Holdings, Inc.*, 592 F. Supp. 3d 230, 240 (S.D.N.Y. 2022) ("Where, as here, a plaintiff

corporation has been repeatedly warned that its claim will be dismissed absent retention of counsel, and it has failed to appear through counsel, dismissal is appropriate.").

This leaves for consideration Bartolini's own claims. Bartolini's *pro se* status means that his filings must be held to less stringent standards than pleadings drafted by an attorney.[5] *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). As the Second Circuit has repeatedly explained, *pro se* filings must be "construed liberally" with "special solicitude" and interpreted to raise the strongest claims that they suggest. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). "This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

But Bartolini's unrepresented status does not save his amended complaint from dismissal, at least as against the Law Firm defendants. Broadly speaking, Bartolini's amended complaint alleges that defendants collectively violated: (1) his procedural due process rights by refusing to let him call witnesses at the ZBA hearing; and (2) his right to free speech "via whistleblowing at a public hearing." Am. Compl. at 365–39, 395–402. Bartolini further alleges that (3) defendants conspired "to keep crypto out of Dryden." *Id*. at 478–89.

Liberally construed, these claims arise under federal law. Federal courts have original jurisdiction over cases in which: (1) there is a so-called "federal question," in that a colorable claim arises under the "Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331; and/or (2) there is "complete diversity of citizenship" between the parties and at least $75,000 in

---

[5] The amended complaint alleges that "NYMC was a Cornell Undergrad who attended law school." Am. Compl. at 663–64. This might be understood as a claim by Bartolini to specialized education or legal training. Although "[i]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," it is also well established that "a lawyer representing himself ordinarily receives no such solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 92 (2d Cir. 2010). In fact, even in the absence of formal legal training, the Court may withdraw the degree of solicitude afforded to a *pro se* litigant who is experienced in litigation. *Id*. at 102. However, because it is unclear from the existing record whether Bartolini is a lawyer or even if Bartolini has any relevant legal experience, the Court declines to withdraw any special solicitude at this early stage of the case.

controversy, 28 U.S.C. § 1332.  Bartolini and the Town defendant-officials are all residents of New York, which means there are almost certainly New York domiciliaries on both sides of the "v." in this case.  *See, e.g., Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 53–54 (2d Cir. 2019) (explaining "citizenship" for purposes of diversity jurisdiction).  Accordingly, the Court would lack the subject-matter jurisdiction needed to hear this dispute in this federal forum unless it raised one or more "federal questions"; *i.e.*, federal-law claims.

The applicable federal law is 42 U.S.C. § 1983.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  However, "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights secured elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Bartolini has alleged violations of his constitutional rights under the First and Fourteenth Amendments as well as an alleged conspiracy to achieve those unlawful ends.[6]  As relevant here, the amended complaint alleges that the Law Firm defendants "practice privately" but were also "contracted and paid by the Town," to perform "the functions of Town Attorney," and "had a

---

[6] The Law Firm defendants argue that Bartolini lacks Article III standing to pursue any of his claims, since NYCM, not Bartolini, is the Building's owner and therefore NYCM, not Bartolini, would be the party who suffered concrete harm from defendants' alleged conduct.  Although "the party bringing the suit must establish standing to prosecute the action," *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), this standing inquiry "in federal court is a question of federal law, not state law," *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013).  Because Bartolini is *pro se*, and because the Law Firm defendants rely solely on a few state-court decisions to press this standing argument, it will be rejected without prejudice to renew, if necessary.

special duty by oaths and licenses to prevent and not partake in civil rights violations."  Am.

Compl. at 210–11, 233–36, 658–60.  The amended complaint further alleges that the Law Firm

defendants "knew they had a duty to research and brief the Town and public with a competent

legal opinion on NYMC[']s concerns and lawsuit threats but intentionally failed to facilitate the

scheme to eventually deprive Plaintiffs of an Appeal hearing via passing an illegal moratorium."

*Id*. at 646–50.

    Even accounting for Bartolini's *pro se* status, these kind of allegations are insufficient to

plausibly establish liability under 42 U.S.C. § 1983 because the Law Firm defendants were not

"acting under color of state law."  A § 1983 plaintiff must plausibly allege that the challenged

conduct constitutes "state action."  *See Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012).

"[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise of

some right or privilege created by the State or by a rule of conduct imposed by the State or by a

person for whom the State is responsible,' *and* that 'the party charged with the deprivation must

be a person who may fairly be said to be a state actor.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526

U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

     As the Supreme Court has recognized, "there is no single test to identify state actions

and state actors."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 294

(2001).  Although a host of factors can bear on this question, three main tests have emerged:

> For purposes of section 1983, the actions of a nominally private
> entity are attributable to the state when: (1) the entity acts pursuant
> to the "coercive power" of the state or is "controlled" by the state
> ("the compulsion test"); (2) when the state provides "significant
> encouragement" to the entity, the entity is a "willful participant in
> joint activity with the state," or the entity's functions are "entwined"
> with state policies ("the joint action test" or "close nexus test"); or
> (3) when the entity "has been delegated a public function by the state
> ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (cleaned up).

None of the Law Firm defendants satisfy any of these tests for "state action." Bartolini's amended complaint alleges that the Town hired and paid private practitioners from the Firm; *i.e.*, Attorney Spinner and Attorney VanWhy, "to perform the functions of Town Attorney." In other words, Bartolini has alleged that the Town retained private legal counsel to perform certain legal work for the municipality. But Bartolini has not, for instance, alleged that any of the Law Firm defendants were Town "employees" in the traditional sense or that the Law Firm defendants were directly exercising some authority granted to them under some source of state or local law, such as the Town charter. Instead, the Law Firm defendants are alleged to have offered legal counsel to others who exercised municipal authority; *i.e.*, the Town's officials.

Federal courts have repeatedly held that private attorneys and private law firms do not engage in "state action" or become "state actors" merely because they are performing licensed legal duties. *Harrison v. New York*, 95 F. Supp. 3d 293, 329 (E.D.N.Y. 2015) (collecting cases). This general rule still applies even if the private attorney or private law firm has been retained to give legal advice to a municipality or some other municipal actor. *Shaw v. Roundout Vall. Cent. Sch. Dist.*, 2015 WL 8492487, at *7 (N.D.N.Y. Dec. 10, 2015) (dismissing § 1983 claims against attorney retained by school district and collecting cases); *Glacken v. Inc. Vill. of Freeport*, 2012 WL 894412, at *5 (E.D.N.Y. Mar. 15, 2012) (holding same and collecting cases).

Even if the Law Firm defendants were considered "state actors" and their alleged conduct were considered "state action," Bartolini's amended complaint still fails to plausibly allege a due process claim against them. The Due Process Clause protects procedural and substantive rights. *Page v. Cuomo*, 478 F. Supp. 3d 355, 370 (N.D.N.Y. 2020). On the one hand, procedural due

process imposes notice-and-hearing requirements that are meant to shield a person "from the mistaken or unjustified deprivation of life, liberty, or property," *Carey v. Piphus*, 435 U.S. 247, 259 (1978), while on the other hand, substantive due process protects against "government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense," *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995).

To demonstrate a due process violation based on a zoning decision, "a plaintiff must first demonstrate the possession of a federally protected property right to the relief sought." *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 236–37 (E.D.N.Y. 2009) (collecting cases). If such a right is established, "the court may turn to the second prong of the due process analysis; *i.e.*, the sufficiency of any state remedy (in the context of a procedural due process claim), or the nature of defendant's conduct (in the context of a substantive due process analysis)." *Id.* (cleaned up).

Liberally construed, Bartolini's amended complaint might be understood to argue that he possessed a protected property right in the issuance of the building permit. That claim might be viable against one or more of the Town defendant-officials. But it fails as a matter of law against the Law Firm defendants.[7] The Law Firm defendants' alleged involvement was to give the ZBA poor legal advice and/or to rush through the procedures involved in passing the moratorium. In other words, at most Bartolini has alleged that the Law Firm defendants deprived him of the full, fair, or proper *procedure*. However, the Second Circuit has held that a land-use plaintiff has no

---

[7] There is a good chance this claim would fail against the Town defendants, too. "While Section 1983 is often used as a vehicle to challenge local land use decisions, . . . . federal courts hearing civil rights cases do not sit as zoning boards of appeal[.]" *Puckett*, 631 F. Supp. 2d at 237. Thus, courts are generally reluctant to find that a plaintiff has a property right in the issuance of a zoning-related decision. *See, e.g.*, *Missere v. Gross*, 826 F. Supp. 2d 542, 558 (S.D.N.Y. 2011). But even when they do, courts often find that procedural due process is satisfied as a matter of law if the deprivation can be challenged using a meaningful post-deprivation remedy, such as an Article 78 proceeding in state court. *See, e.g.*, *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 428 (E.D.N.Y. 2021) (collecting cases).

protectable interest in the *procedures* used for making a land-use decision.  *See Zahra v. Town of Southold*, 48 F.3d 674, 681 (2d Cir. 1995).

Bartolini's free-speech claim fares no better.  To be sure, the government cannot retaliate against someone for engaging in protected speech under the First Amendment.  *See, e.g.*, *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).  But to prevail on such a claim, the plaintiff must show an individual defendant's "personal involvement" in the alleged violation.  *Dukes v. City of Albany*, 492 F. Supp. 3d 4, 12 (N.D.N.Y. 2020).  Bartolini's amended complaint alleges that the Town's officials tried to silence Bartolini at the hearing, refused to let him participate fully, and voted to impose the moratorium over his valid objections.  As before, those allegations might amount to a plausible claim against one or more of the Town's defendant-officials.  But again, the amended complaint does not plausibly allege that the Law Firm defendants were "personally involved" in that alleged misconduct.  *Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) ("If a defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant."  (emphasis in original)).

Bartolini's conspiracy claim must also be dismissed against the Law Firm defendants.  A private actor can be held liable under § 1983 if they conspire with a state actor or state actors to deprive a person of his federal rights.  "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

Bartolini has not plausibly alleged facts that would give rise to liability under this body of law.  Liberally construed, the amended complaint alleges that Attorney Spinner and/or Attorney VanWhy participated in procedural irregularities or other unfair behavior in connection with the

Town meeting. Of course, "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct evidence." *Pangburn*, 200 F.3d at 72 (cleaned up). However, "[a]n otherwise invalid 1983 claim cannot survive a motion to dismiss merely by mentioning the word 'conspiracy.'" *Brewster v. Nassau County*, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004).

Here, Bartolini has alleged in conclusory fashion that the Law Firm defendants conspired with the Town defendant-officials to inflict an unconstitutional injury on him, chiefly in the form of the wrongful denial of his zoning-related request. Absent more detailed allegations tending to support a conspiracy (as opposed to merely an allegedly unfair municipal deliberative process in which the Town's board members interacted with their retained counsel to determine a course of action vis-à-vis Bartolini's land-use request), this claim must be dismissed for failure to state a plausible claim for relief. *See, e.g.*, *Morpurgo v. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 331 (E.D.N.Y. 2010) ("The Second Circuit has repeatedly held that [ ] conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights are insufficient—even on the more lenient standard used to decide a motion to dismiss.").

In light of Bartolini's *pro se* status, the Court has also considered whether the amended complaint might give rise to any other actionable claims against the Law Firm defendants. *See, e.g.*, *Belizaire v. RAV Inv. & Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014) ("[A] *pro se* plaintiff is not required to articulate the appropriate legal theory under which relief may be granted, but instead must only allege sufficient facts to make out an actionable claim."). But as explained above, the most appropriate legal basis for Bartolini's allegations—against municipal actors for allegedly violating his constitutional rights during proceedings related to a land-use dispute—would be § 1983. No other actionable claims are immediately apparent on this kind of

a fact pattern.[8]  *See, e.g.*, *Molina v. Kaye*, 956 F. Supp. 261, 263 (E.D.N.Y. 1996) ("This Court need not . . . create a case for the pro se which does not exist.").  Accordingly, the Law Firm defendants' motion to dismiss must be granted.

## V.     CONCLUSION

A *pro se* litigant cannot represent an artificial legal entity in federal court and therefore NYMC must be dismissed.  The Law Firm defendants are not "state actors" under § 1983 and therefore Bartolini's constitutional claims against them must be dismissed.  However, the Town defendant-officials have answered Bartolini's amended complaint.  Bartolini is advised that his claims will proceed against those defendants.  The Court expects that the magistrate judge will issue a Rule 16 scheduling order to get things moving shortly after this decision hits the docket.

Therefore, it is

ORDERED that

1.  NYMC LLC is *sua sponte* DISMISSED as a plaintiff;

2.  The Law Firm defendants' motion to dismiss (Dkt. No. 32) is GRANTED;

3.  Bartolini's § 1983 claims against the Law Firm defendants are DISMISSED;

4.  The Clerk of the Court is directed to terminate from the docket report:

    (a) "New York Metro Cloud LLC" as a plaintiff;

    (b) "Law Firm Coughlin & Gerhart, LLP," "Mark Spinner, Esq.," and "Nathan D. VanWhy, Esq." as defendants.

---

[8]  For substantially the same reasons, the Court concludes that *sua sponte* granting Bartolini leave to amend would be unlikely to be productive against the Law Firm defendants.  *See, e.g.*, *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

The Clerk of the Court is directed to terminate the pending motion, update the caption of the docket accordingly, and refer this matter to the assigned magistrate judge for further proceedings.

**IT IS SO ORDERED.**

Dated:  May 23, 2025
　　　　Utica, New York.

Anthony J. Brindisi
U.S. District Judge